IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JENNY SMITH, also known as<br>JERRY WAYNE SMITH,<br>    ID # 54898-177,<br>        Plaintiff, | §<br>§<br>§<br>§<br>§ | |
| v. | § | No. 3:24-CV-113-K-BW |
| | § | |
| FEDERAL BUREAU OF PRISONS,<br>et al.,<br>        Defendants. | §<br>§<br>§<br>§ | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Before the Court is the Complaint with Jury Demand, received on October 26, 2023 and transferred to this Court on January 16, 2024.  (Dkt. No. 1.)  Based on the relevant filings and applicable law, the Court should **DISMISS** the complaint with prejudice under 28 U.S.C. § 1915 and § 1915A.

## I.  INTRODUCTION

Jenny Smith, also known as Jerry Wayne Smith, a person born male who identifies as a woman currently incarcerated at the Federal Correctional Institution, Seagoville ("FCI Seagoville"), filed this civil rights action against the Federal Bureau of Prisons ("BOP"), various BOP directors, administrators, and medical providers,

---

[1] By Special Order No. 3-251, this pro se case has been automatically referred for full case management.  (*See* Dkt. No. 6.)  By Special Order No. 3-354, this case was transferred and reassigned to the undersigned on August 23, 2024.  (*See* Dkt. No. 14.)

and the warden of FCI Seagoville for violation of his constitutional rights.[2]  (*See id.* at 3-7.)  Smith seeks "declaratory and injunctive relief to require Defendants to provide her the medical treatment they are obligated to provide her under the Eighth Amendment, to house her in a women's facility consistent with Defendants' obligations to provide her equal protection under the Fifth Amendment, and to protect her from the grave risk of serious physical and sexual assaults she faces on an ongoing basis as required by the Eighth Amendment."  (*Id.* at 2.)

On February 16, 2024, and April 29, 2024, respectively, Smith responded to Magistrate Judge's Questionnaires ("MJQ") to further clarify the claims presented in this lawsuit.  (*See* Dkt. Nos. 11, 13, 13-1.)  In responses to the Court's second MJQ, Smith appears to add a corrections officer, two psychologists, a doctor, a former warden, and three BOP departments as Defendants.  (*See* Dkt. No. 13 at 2; Dkt. No. 13-1 at 2.)

## II.  PRELIMINARY SCREENING

Smith is a federal prisoner who has been permitted to proceed in forma pauperis ("IFP") in this action.  (*See* Dkt. No. 9.)  As a prisoner seeking redress from a governmental entity and officers of same, his complaint is subject to preliminary screening under 28 U.S.C. § 1915A.  *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th

---

[2] The Court acknowledges that Smith's preferred pronouns are female.  (*See generally* Dkt. No. 1.)  Because the records in the federal criminal proceedings that resulted in Smith's current imprisonment used male pronouns when referring to Smith and because Smith acknowledges being "assigned male at birth," the Court uses male pronouns—unless directly quoting Smith—in the interest of consistency when referring to Smith in this recommendation.  (*Id.* at 3; *see also United States v. Smith*, No. 3:16-CR-481-N (N.D. Tex. May 19, 2017).)

Cir. 1998). Because Smith is proceeding IFP, the complaint also is subject to screening under § 1915(e)(2). Both § 1915A(b) and § 1915(e)(2)(B) provide for sua sponte dismissal of a complaint, or any part of it, if the Court finds it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483-84 (5th Cir. 1991); *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining in relevant part that responses to a questionnaire are incorporated into the plaintiff's pleadings).

In evaluating the sufficiency of a complaint, the Court accepts well-pleaded factual allegations as true, but it does not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). While courts hold pro se plaintiffs to a more lenient standard when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

3

## III.  ANALYSIS

Smith sues the original officer Defendants in their individual capacities under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971), and the BOP and original officer Defendants in their official capacities under § 702 of the Administrative Procedure Act ("APA").  (Dkt. No. 11 at 2; *see also* Dkt. No. 1 at 3-4.)  Although Smith does not identify the legal bases on which the Defendants identified in the responses to the Court's second MJQ are sued, the Court considers these Defendants sued under both statutes in the same manner as the remaining Defendants.  (*See* Dkt. No. 13 at 2; Dkt. No. 13-1 at 2.)

### A.  *Bivens*

Smith has alleged three categories of civil rights claims: (1) failure to provide medical care under the Eighth Amendment, (2) failure to place Smith in a female prison facility under the Fifth Amendment, and (3) failure to protect under the Eighth Amendment.  (*See* Dkt. No. 1 at 25-30.)  Assuming that Smith seeks relief in this action that is available under *Bivens*, the Court must determine if Smith's claims properly arise under *Bivens*.  *See Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999) ("A *Bivens* action is analogous to an action under § 1983—the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials."), *abrogated on other grounds by Castellano v. Fragozo*, 352 F.3d 939, 948-49 (5th Cir. 2003).

In *Bivens*, the United States Supreme Court created a cause of action under the Fourth Amendment where federal agents allegedly "manacled" the plaintiff "in front of his wife and children, and threatened to arrest the entire family"; "searched the apartment from stem to stern"; and took him to a federal courthouse where he was "interrogated, booked, and subjected to a visual strip search." *Bivens*, 403 U.S. at 389. "Over the next decade, the Supreme Court recognized two other causes of action against federal officers: (1) for gender discrimination against a former congressional staffer in violation of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228 (1979); and (2) for a failure to provide an asthmatic prisoner with adequate medical care in violation of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980)." *Bolden v. FBOP*, No. 1:24-CV-00270, 2024 WL 4182123, at *1 (W.D. La. Aug. 13, 2024), *rec. adopted*, 2024 WL 4181793 (W.D. La. Sept. 12, 2024). "Since then, the Supreme Court has not once extended the *Bivens* remedy, and it has declined to do so at least a dozen times." *Id.* (citing *Looper v. Jones*, No. 22-40579, 2023 WL 5814910, at *1 (5th Cir. Sept. 8, 2023) (unpublished)).

As recently as June 30, 2025, the Supreme Court declined to extend *Bivens* to include an implied cause of action for damages based on an excessive use of force claim under the Eighth Amendment. *See Goldey v. Fields*, 606 U.S. 942 (2025). The Supreme Court "has repeatedly emphasized that recognizing a cause of action under *Bivens* is a disfavored judicial activity." *Id.* at 944 (quoting *Egbert v. Boule*, 596 U.S. 482, 492 (2022)) (cleaned up); *see also Ziglar v. Abassi*, 582 U.S. 120, 135 (2017)

(same). "[C]reating a cause of action is a legislative endeavor." *Egbert*, 596 U.S. at 491. "So today, '*Bivens* claims generally are limited to the circumstances' of *Bivens*, *Davis*, and *Carlson*." *Looper*, 2023 WL 5814910, at *1.

"When analyzing a proposed *Bivens* claim, a court must consider: (1) whether the case presents a new context; and (2) if so, whether there are any alternative remedies or special factors indicating that judges are 'at least arguably less equipped than Congress' to create a damages remedy." *Bolden*, 2024 WL 4182123, at *2 (citing *Egbert*, 596 U.S. at 492). A proposed *Bivens* claim is "new" if the case is different in any meaningful way from *Bivens*, *Davis*, or *Carlson*. *See Abbasi*, 582 U.S. at 139. "Virtually everything else is a 'new context'" and the "understanding of a 'new context' is broad . . . because even a modest extension of the *Bivens* trilogy is still an extension." *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) (citations and internal quotation marks omitted).

### 1. Medical Care

With the aforementioned factors in mind, and based on Fifth Circuit case law holding that a federal inmate's Eighth Amendment claim based on a failure to provide adequate medical care did not arise in a new *Bivens* context even though, unlike in *Carlson*, the inmate "did not die, his need for medical attention did not relate to asthma, and he had access to the administrative remedy process," the Court assumes for screening purposes that Smith's Eighth Amendment claim based on his medical care does not present a new context under *Bivens*. *Vaughn v. Bassett*, No. 22-

10962, 2024 WL 2891897, at *4 (5th Cir. June 10, 2024) (relying on *Carlucci v. Chapa*, 884 F.3d 534 (5th Cir. 2018)).  The Court therefore addresses Smith's Eighth Amendment medical care allegations under *Bivens*.

The Eighth Amendment proscribes cruel and unusual punishments, which the Supreme Court has interpreted to include deliberate indifference to the serious medical needs of prisoners.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  For deliberate indifference to rise to the level of a constitutional violation, the plaintiff must establish that the defendant knew of and disregarded an excessive risk to the plaintiff's health or safety.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*  A defendant's "failure to alleviate a significant risk that he should have perceived but did not" does not constitute a constitutional violation.  *Id.* at 838.  Deliberate indifference "is an extremely high standard to meet."  *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

"A prison official acts with deliberate indifference 'only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it.'"  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847); *see also Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994).  Unsuccessful medical treatment, negligence, and medical malpractice are insufficient to constitute deliberate indifference, as is a prisoner's disagreement with his medical treatment, absent exceptional

circumstances.  *See Hall v. Thomas*, 190 F.3d 693, 697-98 (5th Cir. 1999); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999); *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).  Rather, a showing of deliberate indifference for purposes of the Eighth Amendment requires the prisoner to show that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).  The Fifth Circuit has defined a "serious medical need" as "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert*, 463 F.3d at 345 n.12.

Here, Smith contends that he "is being denied medically necessary treatment for her gender dysphoria, including gender confirmation surgery ('GCS'), permanent hair removal, and social transition treatment, causing her ongoing and significant harm." (Dkt. No. 1 at 1; *see id.* at 26.)  Smith argues that despite knowing since 2017 that Smith is a transgender woman, various Defendants "have consistently denied her adequate treatment, housed her in facilities for men, and refused her requests to be transferred to a women's prison." (*Id.* at 1.)  According to Smith, the denial of this "necessary medical treatment to Ms. Smith constitutes deliberate indifference to a serious medical need in violation of the Eighth Amendment." (*Id.* at 27.)

Smith has not plausibly alleged that any Defendant was deliberately indifferent to his serious medical needs.  A review of Smith's allegations and verified

MJQ responses show that the BOP confirmed Smith's gender dysphoria diagnosis in 2017, as Smith acknowledges, and that Smith has received medical treatment for gender dysphoria, including hormone therapy, placement in a transgender support group, and some psychological counseling, from the BOP since 2017. (*See* Dkt. No. 1 at 15-16; Dkt. No. 13 at 1-2, 4-8, 31-43, 49.) Smith's disagreement and dissatisfaction with the extent of the treatment for gender dysphoria that he has received while incarcerated because it does not include his preferred course of treatment is not grounds for a medical indifference claim violative of the Eighth Amendment. *See Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018). Rather, "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (cleaned up).

Smith has not shown that GCS, permanent hair removal, and confinement in a women's prison facility constitute such necessities. None of Smith's allegations or the documents provided in response to the Court's MJQs show that any of Smith's medical providers—either prior to or during incarceration—identified, much less prescribed, the treatment Smith seeks as medically necessary or otherwise. Further, as to Smith's desired GCS treatment, the Fifth Circuit has recently reconfirmed that "there remains 'significant disagreement within the medical community' about whether sex-reassignment surgery is an 'effective treatment for gender dysphoria.'" *Haverkamp v. Linthicum*, 152 F.4th 618, 625 (5th Cir. 2025) (quoting *Gibson v. Collier*, 920 F.3d 212, 223 (5th Cir. 2019)); *see also Clark v. Valleta*, 157 F.4th 201, 213-17 (2d

Cir. 2025) (discussing "the absence of clearly established law supporting [transgender prisoner's] gender-dysphoria claims."). Even the primary resource on which Smith relies in the complaint—the World Professional Association for Transgender Health's ("WPATH") published Standards of Care for the Health of Transexual, Transgender, and Gender Nonconforming People—maintains, according to Smith, that the "particular course of medical treatment [for gender dysphoria] varies based on the individualized needs of the person."[3] (*See* Dkt. No. 1 at 9-12.)

When, as here, "a genuine debate exists within the medical community about the necessity or efficacy" of a particular treatment, there "is no intentional or wanton deprivation of care" under the Eighth Amendment. *Gibson*, 920 F.3d at 220; *see also Clark v. LeBlanc*, No. 19-00512-BAJ-SDJ, 2023 WL 2655725, at *10-11 (M.D. La. Mar. 27, 2023) (taking judicial notice of the existence of a genuine debate "as to the medical necessity of social transitioning to [gender dysphoria] treatment"). Likewise, despite Smith's contention that a transfer or assignment to a women's prison facility is a medically necessary treatment for his gender dysphoria, "the decision to send an inmate to a facility to receive further treatment is analogous to the decision to provide further treatment, which is a 'classic example of a matter for medical judgment' that does not constitute deliberate indifference." *Little v. Stern*,

---

[3] Although the WPATH Standards of Care advocate the effectiveness of certain forms of treatment for some cases of gender dysphoria, the Fifth Circuit has concluded that "the WPATH Standards of Care reflect not consensus, but merely one side in a sharply contested medical debate over sex reassignment surgery." *Gibson*, 920 F.3d at 221.

No. 1:24-CV-00059-BU, 2025 WL 4097394, at *17 (N.D. Tex. Dec. 30, 2025), *rec. adopted*, 2026 WL 260423 (N.D. Tex. Jan. 30, 2026).

In short, Smith fails to plausibly allege that any of the named Defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for serious medical needs." *Johnson*, 759 F.2d at 1238. As the Court has explained, Smith in essence disagrees and is dissatisfied with the extent of the treatment he has received for his gender dysphoria diagnosis while incarcerated, complaining that the treatment should include a wider array of gender-dysphoria treatments. Such disagreement or dissatisfaction with his medical treatment is not grounds for a constitutional claim of medical indifference under *Bivens*. *See Delaughter*, 909 F.3d at 136. The Court therefore should dismiss with prejudice Smith's Eighth Amendment medical care claim under *Bivens*.[4]

### 2. Equal Protection and Failure to Protect

Smith's Fifth Amendment equal protection claim and Eighth Amendment failure-to-protect claim, although involving the same constitutional amendments as *Davis* and *Carlson*, respectively, differ in meaningful ways from the issues in those

---

[4] To the extent Smith sues Defendants BOP Transgender Executive Council, which has since been renamed the Special Populations Oversight Committee, an unspecified BOP Regional Office, and the BOP Central Office, for inadequate medical care in violation of the Eighth Amendment, a *Bivens* action may not be brought against a federal agency, such as the BOP, or subdivisions thereof. (*See* Dkt. No. 13-1 at 2); *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994); *Moore v. United States Dep't of Agric.*, 55 F.3d 991, 995 (5th Cir. 1995). Accordingly, Smith has not alleged a viable *Bivens* claim against these Defendants, and any such claim against them, to the extent asserted, should be dismissed with prejudice on this additional basis.

cases recognizing an implied cause of action under *Bivens*, and they thereby present a new *Bivens* context. *See Hernandez v. Mesa*, 589 U.S. 93, 103 (2020) ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized.").

Specifically, as to Smith's equal protection claim under the Fifth Amendment, Smith alleges that "Defendants' housing of Ms. Smith based on her 'biological' sex, and not her gender identity, discriminates against her on the basis of her sex and transgender status." (Dkt. No. 1 at 28.) The factual allegations supporting this claim are a far cry, and meaningfully differ, from the facts and circumstances in *Davis*, which involved sex-based employment discrimination by a congressman against a female congressional staffer. *See Oliva*, 973 F.3d at 442. Smith's Fifth Amendment equal protection claim therefore presents a new *Bivens* context.

As to Smith's failure-to-protect claim, Smith alleges that Defendants violated the Eighth Amendment by failing to protect him "from known and substantial risks of serious harm from prison staff and other incarcerated persons as a transgender woman in a men's prison." (Dkt. No. 1 at 30.) These allegations and the alleged facts supporting same materially differ from the Eighth Amendment medical indifference factual allegations and issues in *Carlson*; Smith's failure-to-protect claim therefore also presents a new *Bivens* context. *See, e.g.*, *Looper*, 2023 WL 5814910, at *2 ("Even though *Carlson* created a cause of action [under *Bivens*] for an asthmatic prisoner's Eighth Amendment failure to medicate claim, it did not create a cause of action for a prisoner's Eighth Amendment failure to protect or intervene claim.").

12

Because both claims arise in a new *Bivens* context, the next step is to determine "whether there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Goldey*, 606 U.S. at 944 (internal quotation marks omitted). The salient "special factor" in this case is whether "there are alternative remedial structures in place [because] that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Egbert*, 596 U.S. at 493 (internal quotation marks omitted). "The existence of such alternative remedial procedures counsels against allowing *Bivens* suits even if such procedures are not as effective as an individual damages remedy." *Goldey*, 606 U.S. at 944-45 (quoting *Egbert*, 596 U.S. at 498) (cleaned up). "[T]he alternative relief necessary to limit *Bivens* need not provide the exact same kind of relief *Bivens* would." *Oliva*, 973 F.3d at 444.

The existence of the BOP's Administrative Remedy Program demonstrates that there is an alternative remedial structure in place; to the extent a federal prisoner sustains injuries during incarceration, the Federal Torts Claims Act also provides an avenue to relief. *See* 28 C.F.R. § 542.10(a) (enabling "inmate[s] to seek formal review of an issue relating to any aspect of his/her own confinement."); *Watkins v. Carter*, No. 20-40234, 2021 WL 4533206, at *2 (5th Cir. Oct. 4, 2021) (unpublished). Additionally, "the separation of powers is another special factor weighing against extending *Bivens* because Congress has had the occasion to consider prisoner rights,

13

but has not legislated to extend the reach of *Bivens*." *Bush v. Watson*, No. 1:18-cv-595, 2022 WL 2072227, at *3 (E.D. Tex. Apr. 11, 2022) (citing *Watkins v. Three Admin. Remedy Coordinators of BOP*, 998 F.3d 682, 685-86 (5th Cir. 2021)); *see also Oliva*, 973 F.3d at 444 ("This 'silence of Congress is relevant' to the special-factors inquiry."). These special factors counsel against the extension of *Bivens* here. *See Watkins*, 2021 WL 4533206, at *2. Because Smith's Fifth Amendment equal protection and Eighth Amendment failure-to-protect claims present new contexts under *Bivens*, the Court should dismiss them with prejudice.

## B. APA

Smith purports to "make[] claims against the officers in their official capacity under 5 U.S.C. § 702" of the APA for alleged violations of his Fifth and Eighth Amendment rights; Defendant BOP is also included among the allegations on which the APA claims appear to be premised. (Dkt. No. 11 at 2; *see also* Dkt. No. 1 at 26-29.)

The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Only "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. The APA does not apply when: "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a); *see also*

*Hammonds v. Fed. Bureau of Prisons*, No. 4-11-CV-578-Y, 2012 WL 759886, at \*2 (N.D. Tex. Mar. 7, 2012).

Here, Smith does not articulate or explain any claim in the context of the APA aside from generally citing § 702 of the APA as the legal basis for his claims against the BOP officer Defendants in their official capacities. (*See* Dkt. No. 11 at 2.) The Court notes, however, that in his first and second grounds for relief, Smith alleges in part that the implementation and enforcement of the BOP's "'biological sex' based housing policy" violates his Eighth and Fifth Amendment rights, respectively. (Dkt. No. 1 at 27-28.) The policy on which Smith premises his allegations is BOP Program Statement 5200.04—the BOP's Transgender Offender Manual—as subsequently modified by Change Notice 5200.04 CN-1 thereto. (*See* Dkt. No. 1 at 18-21, 27-28.) Smith believes that following the implementation of the change notice to Program Statement 5200.04 in 2018, "Defendants have assigned transgender prisoners to facilities solely based on their sex assigned at birth and have failed to transfer any transgender prisoners to facilities that accord with their gender identity, rather than their sex assigned at birth." (*Id.* at 20-21.)

Smith's allegations challenge the BOP's determination of his place of imprisonment and the denial of his requests for a transfer to a women's BOP facility, purportedly under Program Statement 5200.04. The BOP has the statutory authority to "designate the place of the prisoner's imprisonment," and it "may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the [BOP.]" 18 U.S.C. § 3621(b). The provisions of the

15

APA expressly "do not apply to the making of any determination, decision, or order" under the 'Imprisonment' subchapter of Title 18 of the United States Code, of which § 3621(b) is a part.  18 U.S.C. § 3625; *see also Llewlyn v. Friend*, No. 5:20-CV-00235-H, 2022 WL 594139, at *2-3 (N.D. Tex. Feb. 28, 2022).  Additionally, BOP program statements are generally "internal agency guidelines, rather than published regulations subject to the 'rigors of the Administrative Procedure Act,' and therefore 'do not create entitlements enforceable under the APA.'"  *Bitman v. Johnson*, No. 5:24-CV-154-RWS-JBB, 2026 WL 1286845, at *6 (E.D. Tex. May 11, 2026) (quoting *Lewandowski v. Bureau of Prisons*, No. 19-15710 (RBK) (AMD), 2021 WL 5937671, at *4 (D.N.J. Dec. 16, 2021)); *see also Driever v. United States*, No. 19-1807 (TJK), 2020 WL 6135036, at *9 (D.D.C. Oct. 19, 2020) (finding that Program Statement 5200.04 was "not subject to the APA's rulemaking provisions because [it was a] statement[] of internal policy.").

Accordingly, Smith has failed to show that Program Statement 5200.04, as modified by the change notice, is subject to challenge under the APA.  Because Smith has not alleged a viable APA claim against the BOP or any of the individual Defendants in their official capacities, the Court should dismiss Smith's claims under the APA with prejudice.[5]

---

[5] Program Statement 5200.04 is no longer among the current program statements on the BOP's website.  *See* BOP Policies, https://www.bop.gov/PublicInfo/execute/policysearch?todo=query (last visited June 26, 2026).  To the extent Smith's APA claims and request for injunctive and declaratory relief are premised on Program Statement 5200.04 and its corresponding change notice, such claims now appear to be moot.

16

## C. United States Constitution

In the complaint, Smith states that he brings this action "directly under the Constitution" for violations of the Fifth and Eighth Amendments. (Dkt. No. 1 at 3.) Even if the Court assumes that Smith's assertion was not superseded by Smith's MJQ responses, wherein Smith identifies *Bivens* and the APA as his legal bases for relief, the Constitution does not provide a private cause of action. *See, e.g.*, *Kermode v. Farley*, Nos. 3:09cv584-DPJ-FKB, 3:13cv197-DPJ-FKB, 2014 WL 12704991, at *5 (S.D. Miss. Feb. 14, 2014) ("The federal claims based directly on the United States Constitution fail because the Constitution does not create a private cause of action."). Accordingly, to the extent Smith asserts any claims or seeks relief "directly under the Constitution," the Court should dismiss such claims with prejudice.

## IV. LEAVE TO AMEND

Ordinarily, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). Leave to amend is not necessary, however, when the plaintiff has already pled his best case. *See Wiggins v. La. State Univ.—Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017). A verified questionnaire response allows a plaintiff to plead his best case and is a valid way for a pro se plaintiff to amend the complaint. *See Nixon v. Abbott*, 589 F. App'x 279, 279 (5th Cir. 2015) ("Contrary to [the plaintiff's] argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable

17

method for a pro se litigant to develop the factual basis for his complaint."). Because Smith has already responded to two MJQs to clarify his claims, he has pled his best case and further leave to amend is not warranted. Further, based on the most deferential review of Smith's complaint and MJQ responses, it is unlikely that, given the opportunity, Smith could allege viable legal claims against Defendants. Under these circumstances, the Court concludes that granting leave to amend would be futile and cause needless delay.[6]

## V. RECOMMENDATION

The Court should **DISMISS** the Complaint with Jury Demand, received on October 26, 2023 and transferred to this Court on January 16, 2024 (Dkt. No. 1), with prejudice under 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) for failure to state a claim upon which relief may be granted. The Court should count this dismissal as a "strike" or "prior occasion" within the meaning of 28 U.S.C. § 1915(g).[7]

---

[6] Even so, the 14-day objection period will permit Smith the opportunity to proffer factual or legal bases, if any, to cure the deficiencies in his claims outlined herein.

[7] Section 1915(g), which is commonly known as the "three-strikes" provision, provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

**SO RECOMMENDED** on June 29, 2026.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

19